UNITED STATES, Appellee,

v.

Curtis R. HULEN, Corporal, U. S. Marine Corps, Appellant.

No. 32,840.

NCM 76–0036.

U. S. Court of Military Appeals.

Aug. 8, 1977.

*Commander M. D. Rapp,* JAGC, USN, argued the cause for Appellant, Accused. With him on the brief was *Commander Carl H. Horst,* JAGC, USN.

*Lieutenant H. S. Pointer,* JAGC, USN, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress,* USMC, and *Lieutenant Commander N. P. DeCarlo,* JAGC, USN.

Opinion of the Court

COOK, Judge:

Appellant was convicted by a general court-martial of rape, forceful sodomy (two specifications), assault and battery, communicating a threat (two specifications), and kidnapping, in violation of Articles 120, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, 928, and 934, respectively. All of the offenses involved the same victim. We granted review to determine whether the military judge erred by rejecting the appellant's request for a witness.

Prior to trial the defense submitted a request for the production of a witness but it was denied by the convening authority.[1]

---

1. The defense request included several witnesses but only one is relevant to the issue under consideration.

The application was renewed at trial. The witness was an associate professor of psychology with a PhD degree. As he had written an article concerning an experiment by him relating to the difficulty encountered by persons of different races in making interracial identifications, the defense submitted that his testimony should be presented to the court members because the victim and the appellant were members of different races. The military judge denied the request on the basis that any testimony of this nature would be immaterial because such testimony was not related to the victim's ability to identify a member of another race. Subsequently, the defense asserted the witness would be provided at its own expense. The military judge then ruled the witness would not be permitted to testify as to the general area of interracial identification.

The victim testified that the appellant had raped and forcefully sodomized her, uttered threats, and assaulted her in a manner which broke her back. She unhesitantly identified the appellant in the courtroom, and testified she had identified him during a pretrial lineup. Recounting her identification of the appellant during the lineup which was conducted in her hospital room,[2] the victim remarked, "That man just stood out, just like . . . he just stood out." The following colloquy then ensued:

Q. What . . . was there one particular feature, Mrs. D . . . , that you recognized him by? Or how did you recognize him?

A. His whole face. His nose, ears, mouth, build, everything went together. It was just him. He just . . . it was just him the night I was assaulted, sir.

Furthermore, the victim testified she observed her assailant for approximately a period of 2 to 3 hours. The witness desired by the defense was not called.

■ On this appeal, the appellant submits he was prejudiced by the rejection of his requested witness because the witness was a qualified expert and his testimony would have discredited the identification which was made by the victim. We disagree.

In *United States v. Ford*, 4 U.S.C.M.A. 611, 613, 16 C.M.R. 185, 187 (1954), we adopted the test set forth in *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013, 1014 (1923), for the admissibility of expert testimony. That test is defined in the following manner:

" . . . Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."

See *United States v. Wright*, 17 U.S.C.M.A. 183, 37 C.M.R. 447 (1967); *United States v. Massey*, 5 U.S.C.M.A. 514, 18 C.M.R. 138 (1955); *United States v. Adkins*, 5 U.S.C.M.A. 492, 18 C.M.R. 116 (1955); *United States v. Bourchier*, 5 U.S.C.M.A. 15, 17 C.M.R. 15 (1954). The *Frye* test continues to be applied in the Federal civilian courts. *United States v. Alexander*, 526 F.2d 161 (8th Cir. 1975); *United States v. Stifel*, 433 F.2d 431 (6th Cir. 1970), *cert. denied*, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971).

Although the defense referred to the article written by the requested witness, the article was not attached to the record of trial. Whether the military judge was aware of its contents is not clear from the record. The article has been submitted to this Court and we will assume for the sake of this appeal that the military judge was informed of its contents.

Applying the quoted standard of the present case, we conclude the requisite general acceptability within the field of the

---

**2.** The appellant was one of six men of the same race who participated in the lineup.

proposed principle of identification was not demonstrated on the record. In essence, the requested witness had conducted *one* experiment on which his article was based. The defense made no attempt to demonstrate that the witness' endeavors had extended beyond the experimental stage. Accordingly, there was no demonstrable scientific principle as to which expert testimony could be received.

While we are in agreement that there was no such scientific principle, Chief Judge Fletcher and Judge Perry are of the opinion that if a scientific principle had been developed, the proffered evidence would have been sufficiently probative to have required its submission to the court members. However, I am of the opinion that even assuming *arguendo* the existence of a demonstrable scientific principle, the military judge properly exercised his discretion by rejecting the proffered evidence on the basis of insufficient probative value. An examination of the article in question[3] reflects that the subjects were shown a page of 20 photographs of 20 individuals for a period of 1 minute. They were then shown another page of 20 photographs consisting of 9 photographs from the original page and 11 new ones. Finally, they were asked to mark the photographs on the second page which they recognized from the original. This procedure was repeated using photographs from various racial and ethnic groups. One conclusion drawn from the experiment was that the subjects experienced a higher degree of accuracy in identifying photographs of individuals of their own race than those of a different race.

I am aware that some members of our society express an attitude, in reference to members of another race, "that they all look alike." Whether a witness' identification of an accused is influenced by an interracial relationship is subject to numerous considerations other than the race involved. The experiment in question merely involved an ability to identify a group of one-dimensional photographs after perusing them for a period of 1 minute. It did not account for a face-to-face confrontation for a period of 2 to 3 hours nor did it consider the effects of the nature of the confrontation. Furthermore, the proffered evidence did not relate to the victim in question but merely was generalized as to interracial identification, thus failing to account for her particular ability to identify a member of another race.

Finally, an identification of an accused based solely on race would be insufficient to prove identity beyond a reasonable doubt. In the present case, however, the victim clearly testified that her identification of appellant was based on factors other than race, including the appellant's physical characteristics and her extended but unwilling period with the appellant. *See United States v. Quick*, 3 M.J. 70 (C.M.A.1977).

The decision of the United States Navy Court of Military Review is affirmed.

PERRY, Judge (concurring).

For the reasons stated by Judge Cook, I agree with that part of his opinion which concludes that, because "[t]he defense made no attempt to demonstrate that the witness' endeavors had extended beyond the experimental stage . . . there was no demonstrable scientific principle as to which expert testimony could be received."

However, I do not agree with the subsequent portion of the opinion which begins: "[E]ven assuming *arguendo* the existence of a demonstrable scientific principle [of interracial identification], the military judge properly exercised his discretion by rejecting the proffered evidence on the basis of insufficient probative value." This latter proposition is based on the questionable nature and scant results of the one experiment conducted by the witness. This factor is a legitimate one in his judgment, with which I have expressly agreed, that there has been no "scientific principle" *de-*

---

3. Again, we assume for the purpose of this appeal that the military judge was aware of the contents of the article.

*veloped.* However, it has nothing to do with the *existence* of *probative value* of such a principle if we determined the principle had been established. Indeed, I believe that the principle would necessarily have probative value once the defense shows that the evidence developed by the witness had caused his theory to reach the level of a scientific principle. In that event, it would be for the jury to decide the weight which the principle would have upon their evaluation of the victim's specific identification of the appellant as her assailant. In other words, I believe that, had the defense been able to establish the witness' thesis as a "scientific principle," the question at that point would have simply concerned the weight to be accorded his testimony rather than its admissibility.

I am authorized to state that Chief Judge FLETCHER concurs in this opinion.