UNITED STATES, Appellee,

v.

Private First Class Kenneth T. HICKS, SSN 414–94–6917, United States Army, Appellant.

CM 437475.

U. S. Army Court of Military Review.

22 March 1979.

Major Benjamin A. Sims, JAGC, Captain Willard E. Nyman, III, JAGC, and Captain Richard E. Connell, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Douglas P. Franklin, JAGC, and Captain Brian X. Bush, JAGC, were on the pleadings for appellee.

Before FULTON, TALIAFERRO and WATKINS, Appellate Military Judges.

OPINION OF THE COURT

WATKINS, Judge:

The appellant was tried and convicted by general court-martial convened at Schofield Barracks, Hawaii, of robbery (two specifications), disrespect toward his superior com-

missioned officer, assault upon his superior noncommissioned officer, and communicating a threat to kill in violation of Articles 122, 89, 91 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 922, 889, 891 and 934 (1976), respectively. He was sentenced by a court composed of officer and enlisted members to a dishonorable discharge, confinement at hard labor for two years, forfeiture of $150.00 pay per month for 24 months, and reduction to the grade of Private E–1. The sentence was approved by the convening authority. The case is before us for mandatory review pursuant to Article 66, UCMJ, 10 U.S.C. § 866 (1976). The principal appellate issue pertains to the robbery specifications and concerns the admissibility of proffered expert testimony regarding the vagaries of eyewitness identification in stressful situations.

During the early morning hours of 22 January 1978, Technical Sergeant W. B. Nealy of the United States Air Force and his civilian guest, Miss M. Sullivan, were robbed as they were returning from a walk along Waikiki Beach, in the vicinity of the federally-operated Hale Koa Hotel and adjacent recreation area, Honolulu, Hawaii. The incident took place just inside the property line of Fort DeRussy, a small oceanfront military installation approximately 72 acres in size. Each of the three adult male assailants was armed: one (allegedly the appellant) brandished a knife in front of Miss Sullivan, a second held a knife to Sergeant Nealy's throat, and the third measured the nocturnal strollers with a chrome-plated revolver. The lighting conditions, with illumination mostly from the full moon reflecting off the white sand rather than from the nearest source of artificial light some 75 to 100 yards away, were such that the victims were able to observe the physical features of two of the assailants in some detail. The face of the third individual, the one who held a knife to Sergeant Nealy's throat, was not clearly discernible because it was shaded by the brim of the hat he was wearing. The confrontation lasted for approximately five to seven minutes. During that period of time, the victims Nealy and Sullivan observed the three individuals at very close range. Four days later, at a police lineup conducted by the Honolulu Police Department, the two victims separately identified the appellant as one of the perpetrators. Subsequently, at the pretrial investigation and again at trial, the appellant was reidentified by Sergeant Nealy and Miss Sullivan.

The appellant assigns as error the denial by the trial judge of a defense motion to produce at Government expense Doctor Robert Buckhout, a psychologist whose resume indicates that his area of expertise is "Social and environmental Psychology-Perception, memory, stress and social influence" and whose testimony would have related to "Social and perceptual factors in eyewitness identification."[1] According to appellant's brief before this Court, the trial defense counsel was seeking to obtain Doctor Buckhout's testimony "concerning two situations: first, the unreliability of eyewitness identification under stress [,] and second, an impermissibly suggestive lineup which would taint in-court identification."[2] In denying the motion to produce Doctor Buckhout as an expert witness, the trial judge expressed doubt that the subject of eyewitness identification is a proper one for expert testimony and indicated that he considers the matter to be one of fact for the lay court members. The appellant now alleges that he was materially prejudiced by the Government's failure to produce this material and necessary witness.

■ The principal support for the appellant's argument is found in obiter dicta attributable to two judges in *United States v. Hulen*, 3 M.J. 275 (C.M.A.1977), suggesting that once the defense establishes a prospective witness' thesis as a "scientific prin-

---

1. Defense Exhibit A for Identification. All succeeding references in this opinion to a Doctor Buckhout relate to this same person: Robert Buckhout, Ph.D., Center for Responsive Psychology, Brooklyn College, C.U.N.Y.

2. In addition, the record reflects that the witness would have addressed the more specialized topic of interracial identification.

ciple," the issue shifts from one of admissibility to one of the weight to be accorded the testimony. *Id.* at 278. We disagree with this analysis and believe that the better-reasoned view, and the one which appears to have been adopted by virtually all of the other Federal courts which have considered this issue, is as espoused in dictum by Judge Cook (the author of the lead opinion in *United States v. Hulen, supra*) to the effect that a measure of discretion in the trial judge should be recognized "even assuming *arguendo* the existence of a demonstrable scientific principle." (Emphasis in original).[3] *Id.* at 277. Because we perceive an increase in the number of cases coming before this Court in which this or related issues have been raised and litigated at the trial level, we shall take this opportunity to examine this question in some detail.

The leading Federal case is *United States v. Amaral,* 488 F.2d 1148 (9th Cir. 1973), in which the court rejected a defense contention that the trial court abused its discretion in refusing to allow the defense to present testimony by an alleged expert witness regarding the reliability of eyewitness testimony. The court indicated that the issue of whether the lower court erred in excluding such testimony must be resolved in reference to the following criteria: (1) qualified expert, (2) proper subject, (3) conformity to a generally accepted explanatory theory, and (4) probative value compared to prejudicial effect. *Id.* at 1153. In formulating this four-pronged test, the court stated:

The general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony. 7 Wigmore, Evidence § 1923 (3d ed., 1940). *Jenkins v. United States,* 113 U.S.App.D.C. 300, 307 F.2d 637 (1962). The balancing of the probative value of the tendered expert testimony evidence against its prejudicial effect is committed to the 'broad discretion' of the trial judge and his action will not be disturbed unless manifestly erroneous. *Salem v. United States Lines Co.,* 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962).[4]

The court also observed that because of the "aura of special reliability and trustworthiness" surrounding scientific or expert testimony, to permit the introduction of such evidence is to "risk that admission will . . . create a substantial danger of undue prejudice or of confusing the issues or of misleading the jury. . . ." *Id.* at 1152. Failing to see the need for the proffered expert testimony, the Ninth Circuit in *Amaral* pointed out that primary means by which our legal system seeks to ascertain the truth is through cross-examination. In this regard, the court noted that it is the responsibility of counsel during cross-examination "to inquire into the witness' opportunity for observation, his capacity for observation, his attention and interest and his distraction or division of attention." *Id.* at 1153. Ironically, the court cited the research of Doctor Buckhout for the proposition that the effects of stress on perception can be effectively communicated to the jury by probing questioning of the witnesses.[5]

---

3. We are not unmindful of the sound guidance provided this and other inferior appellate courts by the Court of Military Appeals regarding the proper methods of expressing disagreement with the state of military law as reflected in previous decisions of that Honorable Court. *United States v. Heflin,* 1 M.J. 131, 132–33 n.6 (C.M.A.1975). For several reasons, however, we do not believe that comments in the instant case regarding *United States v. Hulen,* 3 M.J. 275 (C.M.A.1977) contravene those guidelines. As we understand the decision in *Hulen,* a holding with which we agree completely, it is in no sense dependent upon the obiter dicta which we have discussed above. We have elected to discuss this latter language solely to invite re-

consideration thereof if and when the Court of Military Appeals is called upon to consider a case, such as this one, in which it is not so clear that the defense failed to demonstrate that the witness' endeavors extended beyond the experimental stage and that there was no demonstrable scientific principle as to which expert testimony could be received.

4. *United States v. Amaral,* 488 F.2d at 1152.

5. A legal memorandum ably prepared by the trial defense counsel in the instant case and attached to the record suggests that Doctor Buckhout was quoted out of context and that in fact he disagrees with the proposition attributed to him in *Amaral.* Appellate Exhibit XII.

Shortly after the decision in *Amaral,* another panel of the Ninth Circuit was confronted with the question of whether a lower court had abused its discretion in refusing to permit the introduction of expert opinion testimony regarding the frailties of eyewitness examination in general and to impeach the eyewitnesses. *United States v. Brown,* 501 F.2d 146 (9th Cir. 1974), *rev'd on other grounds, sub nom. United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Nobles had been convicted of bank robbery in the trial court, where he unsuccessfully sought to introduce the testimony of Doctor Buckhout. On appeal, the court treated the matter as follows:

> Nobles offered the testimony of Dr. Robert Buckhout as an expert witness to describe the problems of eyewitness identification in general and the specific difficulties with the identifications in this case. The court refused the proffered testimony, concluding that the testimony would invade the province of the jury, that the undue consumption of time would substantially outweigh its probative value, and that the offer of proof was inadequate. We in turn cannot conclude that the trial court was in error. *United States v. Amaral,* 488 F.2d 1148 (9th Cir. 1973).[6]

In April 1975, the United States District Court for the Middle District of Pennsylvania was called upon to rule on the post-trial motions of Henry Collins following his conviction, in the same court, of second-degree murder. *United States v. Collins,* 395 F.Supp. 629 (M.D.Pa.1975), *aff'd,* 523 F.2d 1051 (3d Cir. 1975). One of the grounds relied upon by Collins in support of his motion for a new trial was that the trial court erred in denying his request to call as an expert witness a psychologist who had done extensive testing and research in the area of eyewitness identification and the effect on the reliability of such testimony of factors such as stress. The proffered testimony was that of Doctor Buckhout. Quot-

ing from *United States v. 60.14 Acres of Land,* 362 F.2d 660, 667 (3d Cir. 1966) and *Jenkins v. United States,* 113 U.S.App.D.C. 300, 307 F.2d 637, 643 (1962), the court stated:

> " 'To warrant the use of expert testimony . . . two elements are required. First, the subject of the inference (which is to be drawn from the facts) must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.' "[7]

Citing *United States v. Amaral, supra,* the court noted, that once the competence of the expert testimony is established, its probative value must then be weighed against its prejudicial effect. Judged in this manner, the holding was that the trial court properly rejected the testimony of Doctor Buckhout because "the potential prejudice of his testimony outweighed its probative value." *United States v. Collins,* 395 F.Supp. at 636. The court emphasized that "Dr. Buckhout's testimony would have done little more than add a scientific luster to the facts and ideas which were amply presented by cross-examination, counsel's argument to the jury and the charge of the Court." *Id.* at 636–37.

The same approach was adopted by the United States Court of Appeals for the Tenth Circuit in 1976. In *United States v. Brown,* 540 F.2d 1048 (10th Cir. 1976), the appellant urged that his conviction of robbing a Federal Savings and Loan Association be reversed because, *inter alia,* the trial court erred in refusing to allow an expert witness to testify relative to the limitations and weaknesses of eyewitness identification. Prefacing its remarks with a recognition of the considerable discretion vested in the trial court with respect to the admission of evidence, the Tenth Circuit emphasized that expert opinion evidence cannot be per-

---

6. *United States v. Brown,* 501 F.2d at 150–51.

7. *United States v. Collins,* 395 F.Supp. at 636.

mitted to infringe upon the prerogatives of the triers of fact:

> Generally, expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men. 31 Am.Jur.2d, Expert and Opinion Evidence, § 21; 100 A.L.R.2d 1421; 92 A.L.R. 1223. Put another way, the test of admissibility is often predicated upon the proposition that opinion evidence cannot usurp the functions of the jury or be received if it touches the very issue before the jury. *Frase v. Henry,* 444 F.2d 1228 (10th Cir. 1971); Wigmore on Evidence, Third Ed., Vol. VII, §§ 1920, 1921; 31 Am.Jur.2d, Expert and Opinion Evidence, § 22.[8]

Noting the Ninth Circuit precedents of *Amaral* and *Brown,* the Court of Appeals for the Tenth Circuit concluded that the trial court's refusal to allow the defense expert to testify was not improper.

Similarly, in 1977, when this issue arose in the District of Columbia Court of Appeals, the holding was that the trial court had not abused its discretion in excluding the testimony of a psychology professor who reportedly had conducted studies of eyewitness identification and problems of perception.[9] *Dyas v. United States,* 376 A.2d 827 (D.C.1977). Dyas had been convicted in the lower court of armed robbery and possession of a prohibited weapon. The essence of the testimony which the defense had attempted to introduce was that eyewitness identification is not as simple as it is assumed to be, that scientific literature supported the conclusion that one under stress does not make as good an observation as one not under stress, and that once a person publicly announces an opinion, he or she would be motivated to maintain it. *Id.* at 831. In upholding the lower court's rejection of the expert testimony, the court stated that it was not persuaded that the subject matter of the testimony was "beyond the ken of the average layman;" moreover, matters relating to the witness' perception and recollection were seen as proper subjects for cross-examination:

> Implicit in the holding of *Amaral* was that the subject matter of the proffered testimony of the expert, which was similar to that evidence offered here, was not beyond the ken of the average layman. Moreover, the expert's conclusion on the reliability of the eyewitness identification would not aid the jury in evaluating a witness' testimony because the jury would be able to assess the witness' credibility based on the 'inconsistencies and deficiencies' brought out on cross-examination.[10]

In *United States v. Fosher,* 449 F.Supp. 76 (D.Mass.1978), *aff'd* 590 F.2d 381 (1st Cir. 1979), the United States District Court for the District of Massachusetts in a bank robbery prosecution was presented with an application pursuant to 18 U.S.C. § 3006A(e)(1) for the payment at Government expense of the services of Doctor Buckhout as a defense expert witness on the subject of eyewitness identification testimony. The request was opposed by the Government on the basis of Rules 702 and 403 of the Federal Rules of Evidence.[11] Drawing first upon past judicial experience, the court expressed confidence "that the average lay jurors, on the basis of their own life experiences and common sense, can make an informed evaluation of eyewitness testimony without the assistance of a psychologist, particularly when the jurors are

---

**8.** *United States v. Brown,* 540 F.2d at 1054.

**9.** Henry C. Ellis of the University of New Mexico.

**10.** *Dyas v. United States,* 376 A.2d at 832.

**11.** Rule 702 reads as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

aided by professional argument and skillful cross-examination." *United States v. Fosher, supra* at 77. The application before the court was disposed of in the following language:

> Therefore, considering all the circumstances of this case, I rule, as a matter of discretion, that Dr. Buckhout's proffered testimony is inadmissible under Fed.R. Evid. 702 and 403 because the testimony would invade the province of the jury, would create a substantial danger of undue prejudice and confusion because of its aura of special reliability and trustworthiness, and that it would have limited probative value directed, as it is, to the expert's thesis rather than the actual eyewitness accounts. *Accord, United States v. Collins, supra.* For these reasons, the request to call Dr. Buckhout as an expert witness and the application for government payment for his services should be and hereby are denied.[12]

 We find that the logic underlying this line of Federal cases is much more persuasive than the obiter dicta in *United States v. Hulen,* 3 M.J. 275 (C.M.A.1977), suggesting that the admissibility of proffered expert testimony is dependent only upon the establishment of the prospective witness' thesis as a scientific principle. We hold that the issue must be resolved in reference to a broader standard, such as that enumerated in *United States v. Amaral,* 488 F.2d 1148 (9th Cir. 1973), which includes a requirement that the probative value of the tendered expert testimony be weighed against its prejudicial effect.[13] Adopting the four-part *Amaral* test, and applying it to this case, we find no abuse of discretion on the part of the military judge in failing to compel the testimony of Doctor Buckhout.

Finding merit neither in appellant's assertion regarding the "suggestive" nature of the pretrial lineup nor in the remaining assignments of error, the findings of guilty and the sentence are affirmed.

Senior Judge FULTON and Judge TALIAFERRO concur.

---

12. *United States v. Fosher,* 449 F.Supp. at 77.

13. *See* Rule 403 of the Federal Rules of Evidence which is reproduced in n.11, *above.*