**UNITED STATES**

v.

**Master Sergeant Fernando GARCIA,
FR457–92–4510, United States
Air Force.**

**ACM 30327.**

U.S. Air Force Court of Military Review.

Sentenced Adjudged 2 Sept. 1992.

Decided 29 April 1994.

**534**

Appellate Counsel for Appellant: Robert G. Estrada, Esq. (argued), Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Captain Ursula P. Moul, Captain Richard D. Desmond, and Felicia Godwin, Esq.

Appellate Counsel for the United States: Major Barnard N. Madsen (argued), Colonel Jeffery T. Infelise, and Lieutenant Colonel Thomas E. Schlegel.

Before HEIMBURG, PEARSON, and SCHREIER, Appellate Military Judges.

## OPINION OF THE COURT

PEARSON, Judge:

The key issue in this case is whether an accused in a court-martial may present expert testimony to attack the reliability of an eyewitness identification. We hold such testimony is admissible when the accuracy of an eyewitness identification is a critical issue in the case and the expert will testify on specific psychological factors which could have affected the accuracy of the identification. We determine the military judge abused her discretion in excluding the expert testimony here, but affirm the conviction because appellant was not prejudiced by the error.

## FACTS

A general court-martial sitting with officer and enlisted members convicted Master Sergeant Garcia of attempting to kidnap a 13–year–old female, LMJ, and taking indecent liberties with her by communicating indecent language and exposing his penis. The members sentenced Sergeant Garcia to a bad-conduct discharge, 2 years confinement, forfeiture of all pay and allowances, and reduction to E–1, which the convening authority approved as adjudged.

On March 6, 1992, in Wichita Falls, Texas, a man in a small car accosted LMJ, who was walking home from school. After exposing himself and making indecent comments to her, he jumped from the car and tried to force her into it. Fortunately, she broke free and ran a short distance to her home where she reported the attack to her parents.

LMJ and her father, AJ, immediately went looking for the attacker in the family car. LMJ told AJ that the man drove a small blue car with tinted windows and the word "BUG" written in white across the windshield. She added that the car was like the one they used to own, which AJ recalled was a Volkswagen "bug." They were unsuccessful in their

quick search and returned home. Leaving LMJ to await the police, AJ resumed the search. About a block from his home, he saw a Volkswagen that fit the description with a license plate number that he recorded as "355 ONE." He saw the male driver but lost the trail when the driver made a quick U-turn.

Back at home, LMJ and her mother, CSJ, stood in the front yard waiting for the police when LMJ saw a small blue Volkswagen with tinted windows and the word "BUG" written in white across the windshield drive by. LMJ told CSJ, "Oh my gosh, Mom, he's coming." CSJ saw the driver and wrote the license plate number down as "355 ONE." The male driver waved and smiled as he drove by.

LMJ described her attacker for the police as a short white male, possibly tanned, with bushy, collar-length dark hair. Appellant is Hispanic, wore a mustache at the time, and, like most male military members, did not have bushy hair. However, the police investigation focused on appellant because he drove a small blue Volkswagen "bug" with tinted windows, the word "BUG" written in white across the windshield, and license number "355 DNE."

LMJ could not pick her attacker out of a photo array which included appellant's picture. However, she picked both appellant and another male out of a subsequent physical lineup even though appellant had shaved his mustache after the photo array. LMJ's parents also failed to pick appellant out of the photo array, but they recognized appellant at the lineup. However, the lineup deviated from standard investigative procedure because the investigators did not use the same individuals from the photo array—only appellant and the one other person LMJ picked from the lineup were also pictured in the photo array.

At trial, LMJ could not identify appellant as her attacker. Her parents, on the other hand, were certain appellant was the driver of the Volkswagen they saw in the neighborhood.

Appellant admitted he drove in LMJ's neighborhood on March 6th but denied committing the offenses or trying to elude AJ. Appellant also could not recall driving by LMJ's house.

## ADMISSIBILITY OF EXPERT TESTIMONY

### The Proposed Testimony

Appellant's theory at trial was mistaken identity. He tendered Dr. Curtis Wills, a board certified forensic psychologist and consultant to several law enforcement agencies, as an expert in eyewitness identification to attack the witnesses' identifications of himself and his car. Dr. Wills proposed to testify regarding (1) the negative effect of startling events and stress on memory, (2) the suggestiveness of post-event questioning by authority figures such as parents and police, (3) the suggestiveness of lineups following photo arrays where the individuals presented to the witness change, and (4) the inverse correlation between a witness' growing confidence in an identification and its actual accuracy.

### The Military Judge's Ruling

In a hearing conducted out of the presence of the court members pursuant to Article 39, UCMJ, 10 U.S.C. § 839 (1988), Dr. Wills proffered his testimony. Over strenuous prosecution objection, the military judge accepted Dr. Wills as an expert in "forensic psychology and eyewitness identification." The military judge found Dr. Wills' concepts were "probably somewhat accepted." However, relying on *United States v. Hicks*, 7 M.J. 561 (A.C.M.R.), *pet. denied*, 7 M.J. 249 (1979), the military judge determined that expert testimony on eyewitness identification was not generally admissible in military trials. Consequently, the judge severely restricted Dr. Wills' testimony before the members.

The military judge allowed Dr. Wills to testify to the members in general terms about the negative effect that startling events, stress, and post-event questioning have on the accuracy of a witness' memory. She did not let him testify about the suggestibility of the lineup, tailor his testimony to the specifics of the case, or render an opinion

536

on how the various psychological factors affected the accuracy of LMJ's, AJ's, and CSJ's identifications. Moreover, she *sua sponte* cut off direct examination at times, curtly refused to allow defense counsel to redirect after cross-examination, and didn't give the members an opportunity to ask questions.

In restricting Dr. Wills' testimony, the military judge stated the evidence's probative value under Military Rule of Evidence (Rule) 403 was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the members, undue delay, waste of time, and needless presentation of cumulative evidence.

### Admissibility of Expert Testimony to Attack Eyewitness Identifications

*Hicks* is the only published military case dealing with expert testimony attacking eyewitness identifications. In *Hicks*, the appellant argued the military judge erred in denying his motion to produce a psychologist at government expense who would testify about the unreliability of eyewitness identifications made under stress and the suggestiveness of a lineup. The Army Court of Military Review affirmed the conviction, holding the military judge did not abuse his discretion in denying the motion. In ruling, the Court adopted the four-prong test from the "leading Federal case" of *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973). For expert testimony to be admissible, the proponent must establish: (1) a qualified expert, (2) a proper subject, (3) conformity to a generally accepted explanatory theory, and (4) probative value compared to prejudicial effect. *Hicks*, 7 M.J. at 563.

■ While upholding the military judge's ruling, the *Hicks* court did not fully explain how the expert testimony failed any prong of the test. In any event, the third prong of the *Hicks/Amaral* test for expert testimony, conformity to a generally accepted explanatory theory as outlined in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), is no longer valid in military criminal trials, *United States v. Gipson*, 24 M.J. 246 (C.M.A.1987) (applying Mil.R.Evid. 702), or federal trials. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, — U.S. —, 113 S.Ct. 2786, 125

L.Ed.2d 469 (1993) (applying Fed.R.Evid. 702); *United States v. Almador–Galvan*, 9 F.3d 1414, 1418 (9th Cir.1993) (applying *Daubert* in rejecting *Amaral* test). Instead, general acceptance is merely a factor to be considered in weighing whether expert testimony is both relevant and reliable enough for admission. *Daubert*, — U.S. at —, 113 S.Ct. at 2795; *Gipson*, 24 M.J. at 251.

Before *Daubert*, the federal circuits split on whether to admit expert testimony offered by the defense to attack the reliability of an eyewitness identification. The circuits that excluded it determined the testimony (1) did not meet the *Frye* standard of general acceptance, (2) invaded the province of the jury to determine credibility of witnesses, (3) was not helpful because jurors could use their common sense and experience to determine reliability of eyewitness testimony, (4) was only offered in general terms without tying the expert opinion to the facts of the case, or (5) would confuse the jury as eyewitness identification was not a central issue in the case. For a discussion of the various circuit positions, see *United States v. Hudson*, 884 F.2d 1016 (7th Cir.1989) (excluding), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990) and *United States v. Moore*, 786 F.2d 1308 (5th Cir.1986) (admitting), *reh'g denied*, 791 F.2d 928 (5th Cir. 1986) (en banc).

■ In our view, the modern trend is to admit expert testimony on the impact psychological factors such as stress, suggestibility, feedback, and confidence have on the reliability of an eyewitness identification when the identification is a critical issue in the case. Moreover, in military trials, judges should "view liberally the question of whether the expert's testimony may assist the trier of fact." *United States v. Combs*, 35 M.J. 820, 826 (A.F.C.M.R.1992) (citations omitted). And, "[i]f anything, in marginal cases, due process might make the road a tad wider on the defense's side than on the Government's." *Gipson* 24 M.J. at 252; *see Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

■ We do not find the defense proffered expert psychological testimony on the unreli-

ability of the eyewitness identifications in this case any more, or less, mystical than already sanctioned Government expert testimony on rape trauma syndrome, *e.g., United States v. Carter,* 26 M.J. 428 (C.M.A.1988), and child abuse accommodation syndrome, *e.g., United States v. Suarez,* 35 M.J. 374 (C.M.A.1992). We find that each of the areas Dr. Wills proposed to testify about, particularly the impact of stress on accuracy and the relationship between a witness' confidence in an identification and its accuracy, went beyond what an average court member might know as a matter of common knowledge. Some of his principles were counter-intuitive and flew in the face of common beliefs. *See United States v. Downing,* 753 F.2d 1224, 1230–1232 (3d Cir.1985) (quoted in *Daubert,* — U.S. ——, 113 S.Ct. at 2797; and *Gipson,* 24 M.J. at 251); *Moore,* 786 F.2d at 1312–13; *United States v. Smith,* 736 F.2d 1103, 1106 (6th Cir.1984) (observation in first lineup may "unconsciously transfer" to second lineup and result in incorrect identification), *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984).

■ Of course, the proponent of expert testimony must always demonstrate (1) a qualified expert, (2) a proper subject matter, (3) a proper basis for the expert's opinion, (4) the relevance of the testimony to the particular case, (5) the reliability of the evidence, and (6) whether the probative value of the testimony is substantially outweighed by the considerations outlined in Rule 403, such as confusion of the issues. *United States v. Houser,* 36 M.J. 392, 397 (C.M.A.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993). We merely hold that expert testimony offered on the reliability of an eyewitness identification is a proper subject matter for expert opinion and is sufficiently reliable for admission in military criminal trials. As to relevancy, we also hold that the proponent of the expert testimony must show how it is relevant to both the specific eyewitness identification at issue and a disputed factual issue in the case. We leave it to the trial judge to determine in any particular case whether the proponent puts the ball between the goal posts, which brings us to the judge's ruling in this case.

## ABUSE OF DISCRETION STANDARD

On appeal, we review a military judge's decision to admit or exclude expert testimony using an abuse of discretion standard. *Houser,* 36 M.J. at 397. Even if expert testimony is otherwise admissible under Rule 702, the military judge may still exclude it after performing the balancing test of Rule 403, which we also test for an abuse of discretion. *Houser,* 36 M.J. at 400; *United States v. Brooks,* 22 M.J. 441 (C.M.A.1986).

While the military judge did not have the benefit of *Daubert* or *Almador–Galvan,* she did have *Gipson, Downing,* and Rules 702, 704. In this case we find appellant established: (1) Dr. Wills was an expert in the areas in question, (2) his testimony was on a proper subject matter, (3) he had a proper basis for his opinion, (4) his testimony was relevant to a critical issue in the case, (5) his testimony was sufficiently reliable for admission, and (6) the probative value of the testimony was not substantially outweighed by other considerations outlined in Rule 403. We determine the military judge abused her discretion in excluding the proffered expert testimony as the following key factors she highlighted for excluding the evidence are not supported in fact or law:

■ 1. *Dr. Wills' testimony invaded the province of the members to determine the credibility of the witnesses.* Under Rule 704, an expert opinion is not inadmissible because it embraces an ultimate issue in the case. Consequently, invading the province of the members by giving them information on which to make a credibility call is not a valid basis for excluding the testimony. *See Downing,* 753 F.2d at 1229. Dr. Wills was not going to testify as a human lie detector. *See United States v. Hill–Dunning,* 26 M.J. 260 (C.M.A.1988), *cert. denied,* 488 U.S. 967, 109 S.Ct. 494, 102 L.Ed.2d 531 (1988).

■ 2. *Dr. Wills only read the investigative report on the case; he did not interview or test the victim.* An expert need not interview a victim, or any other witness, before rendering an expert opinion about a victim; the expert may base an opinion on an investigative report, statements of witnesses, or

even listening to trial testimony. Mil.R.Evid. 703; *Houser,* 36 M.J. at 399.

■ *3. The defense did not give reasonable notice of the expert to the Government.* While there is some support in the federal circuits for excluding expert testimony when lack of reasonable notice prejudices the other party, *see, e.g., United States v. Dowling,* 855 F.2d 114, 118 (3d Cir.1988), *aff'd on other grounds,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the Government did not offer any prejudice for the military judge to factor into her ruling. The military judge apparently found prejudice *sua sponte* without elaborating on how it occurred. In contrast to her ruling, we note the prosecutor sat quietly when first alerted to the possibility of Dr. Wills' testimony during defense *voir dire* on day one of this week long trial.

■ *4. Rule 403 considerations. The military judge found portions of Dr. Wills' testimony "a little bit incredulous sometimes" because it ran counter to what she believed was commonly true; his testimony about confidence versus accuracy would confuse and mislead the members as he would attack "the whole system" police and courts use to identify suspects; and his testimony about the suggestibility of the lineup was cumulative to the investigator's testimony about not following standard procedure.* In this case, where the alleged victim can't identify her attacker at trial and the other eyewitnesses offer identifications made during fleeting casual observations, we fail to see how the only defense evidence directly attacking the Government's circumstantial identification evidence, other than the appellant's broad denial, could ever be a waste of time, too confusing, or cumulative. *See* Mil. R.Evid. 403; *Downing,* 753 F.2d at 1243. As opposed to the trial judge, we see that expert testimony has a proper purpose in attacking preconceived ideas and beliefs, even those ideas and beliefs held by the court, and, at times, our "whole system." "The 'dangers inhering in eyewitness identification,' particularly of a stranger encountered under stressful conditions, have been recognized by the courts and the object of much comment." *United States v. McLaurin,* 22 M.J. 310, 312 (C.M.A.1986) (citations omitted).

■ *5. Restricting the expert to generalized testimony.* Even those courts which completely excluded the expert testimony recognized that the expert should only present testimony tailored to the facts of the case and not generalized testimony. *See, e.g., United States v. Fosher,* 590 F.2d 381 (1st Cir.1979).

## PREJUDICE

Even though we determine the military judge abused her discretion in excluding relevant portions of the expert's testimony and restricting the rest, we do not grant relief unless we find prejudice. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988); *Combs,* 35 M.J. at 827; *United States v. Sawyer,* 32 M.J. 917 (A.F.C.M.R.1991); *see United States v. Weeks,* 20 M.J. 22 (C.M.A.1985). We do not find it here.

■ In assessing prejudice from excluded expert testimony, we believe the two most important questions to answer are: (1) Was appellant able to adequately present the issue to the members in some other suitable form? and (2) Was the Government's case strong and conclusive when weighed against the defense theory of the case? *See Weeks,* 20 M.J. at 25.

■ We start our review at defense counsel's *voir dire.* Defense counsel expertly questioned the members extensively about identification evidence, tailoring questions to the facts of the case. For example, the members agreed "that if somebody is stressed or frightened, their memory and their perceptions may not be very strong." While *voir dire* questions and answers aren't evidence in the case, the questions and answers show the members were amenable to the defense theory of the case. In presenting that theory, Dr. Wills did testify in general terms about most of the areas in issue except the suggestiveness of the lineup which counsel fully explored through cross-examination of the investigator who conducted it. In closing argument, defense counsel honed the issue of the reliability of the eyewitness' identifications for the members, including how LMJ and her parents had improved on

their identifications over time. Consequently, we conclude appellant was able to adequately present the issue in spite of the military judge's ruling.

As for the quality of the Government's case, we find the evidence establishing appellant's guilt overwhelming. *See Moore,* 786 F.2d at 1313; *Smith,* 736 F.2d at 1107–1108. In this regard, we will not recount appellant's testimony other than to say he was his own worst enemy on the witness stand. Appellant also made several incriminating admissions to a Wichita Falls detective during a telephone conversation and to an Office of Special Investigations special agent during an interview. He told the detective, "nobody drives his Volkswagen but him," and appeared to know facts about the incident only the perpetrator would know. He admitted to the agent that he "might have stopped and talked to a girl" in LMJ's neighborhood on the date of the offenses, and he "stopped for extended periods of time near [her] school."

## REMAINING ISSUES

We resolve the remaining assigned errors adversely to appellant, including the legal and factual sufficiency of the evidence, *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987), and the appropriateness of the sentence, *United States v. Healy,* 26 M.J. 394 (C.M.A.1988).

Accordingly, the findings and sentence are

AFFIRMED.

Senior Judge HEIMBURG and Judge SCHREIER concur.