**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Steven Wayne HAMILTON, Defendant-Appellant.**

**No. 71–2248.**

United States Court of Appeals, Ninth Circuit.

Nov. 9, 1972.

Richard H. Levin, Los Angeles, for defendant-appellant.

William D. Keller, U. S. Atty., Eric A. Nobles, Darrell MacIntyre, Asst. U. S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before ELY and WRIGHT, Circuit Judges, and SMITH,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Hamilton appeals from his conviction on two counts of robbing a federally insured bank in violation of 18 U.S.C. § 2113. We affirm the conviction on Count 1 and employ the concurrent sentence doctrine to decline review of the conviction on Count 2. United States v. Wong, 425 F.2d 1077 (9th Cir. 1970); Jordan v. United States, 416 F. 2d 338 (9th Cir. 1969), cert. den. 397 U.S. 920, 90 S.Ct. 930, 25 L.Ed.2d 101 (1970), rehearing denied, 397 U.S. 1018, 90 S.Ct. 1232, 25 L.Ed.2d 433 (1970).

Count 1 charged Hamilton with participating in the robbery of a branch bank of the Bank of America on October 30, 1970. Two men entered the bank during business hours. One approached a teller, Cheryl Hilaski, and asked where he could open a new account. She directed him to the other side of the room and he turned to move in that direction. The next thing she realized the man was on top of the counter about five feet from her brandishing a weapon. He jumped behind the counter, removed currency from some drawers, vaulted back over the counter and exited the bank with his companion.

A surveillance camera was in operation during the robbery and several pictures of the robbers taken with it were introduced in evidence. During her testimony Miss Hilaski identified Hamilton as the man who jumped upon and over the counter. Fingerprints taken from the counter were introduced and a government expert testified that they matched exemplars taken from Hamilton subsequent to his arrest.

* Honorable Talbot, Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

Hamilton's principal contentions on his appeal of the conviction on Count 1 are (1) that Miss Hilaski's identification of him was improperly admitted; and (2) that the fingerprint exemplars were improperly admitted. We may assume that if either of these items of evidence was improperly admitted the conviction on Count 1 cannot be sustained. However, we find that no error was committed in admitting either the fingerprint exemplars or the in-court identification.

## THE FINGERPRINTS

■ Hamilton contends that the court erred in not holding an evidentiary hearing on his motion to suppress the fingerprint exemplars. *See* Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); United States v. Jennings, 468 F.2d 111 (9th Cir. 1972). Rule 41(e), F.R.Crim.P. provides:

> "The motion [to suppress] shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

The record shows that although Hamilton's trial counsel was aware of the government's intention to utilize fingerprint evidence eight days before trial, he made no motion to suppress until the day of trial. Under these circumstances we do not find that the court abused its discretion in refusing to entertain the belated motion and hold an evidentiary hearing on its merits.

## THE IN-COURT IDENTIFICATION

Hamilton next contends that the court erred when it refused to strike Miss Hilaski's in-court identification of Hamilton as one of the robbers. This identification, he argues, was "tainted" by a prior out-of-court show-up [1] which "was so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process of law. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).[2]

Just before the start of the trial, Miss Hilaski was standing in the corridor adjoining the courtroom, saw Hamilton pass by and, as she later testified, said:

> "Spontaneously—I said to the people I was standing with that is definitely him, without anybody prompting me."

After Hamilton entered the courtroom and was seated at counsel table, Miss Hilaski was asked by the prosecutor to look through the window in the courtroom door and to tell whether she could identify him. Again, she recognized him and so stated to the prosecu-

1. The term "show-up" is used to describe an out-of-court confrontation between the witness and the defendant alone. "Line-up" describes the situation where the defendant is displayed with others. Note, Protection of the Accused at Police Lineups, 6 Colum.J.L. & Soc.Prob. 345 n. 2 (1970).

2. Stovall v. Denno was the third of the trilogy of cases involving restraints on police lineup practices. *See* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). *Wade* and *Gilbert* hold that the accused has a right to have appointed counsel present at a post-indictment police lineup. If counsel is not provided, evidence of any iden- tification made at the lineup is inadmissible. Likewise, the witness may not identify the accused at the trial unless the government can show by "clear and convincing evidence" that the in-court identification is not all a product of the prior identification.

In Stovall v. Denno, the Court refused to apply the *Wade* and *Gilbert* cases retroactively. Nevertheless, the Court held that in certain cases the lineup may be so prejudicial that to allow any identification testimony by a participant in the lineup would result in a denial of due process of law.

Although this case arose subsequent to the *Wade* and *Gilbert* decisions those cases are not controlling for there is no evidence that Hamilton's counsel was not present during the pretrial show-up.

tor. She repeated the identification from the witness stand during the trial.[3]

■ Two points should be made about the confrontation of Hamilton by Miss Hilaski just before trial. Her presence in the corridor, seeing Hamilton approach the courtroom door in handcuffs, and spontaneously volunteering that he was the one she had seen in the bank are a far cry from the type of lineup which the *Wade, Gilbert* and *Stovall* decisions were intended to insure. This confrontation was not arranged by the government. Further, her confirmation in the later conversation with the prosecutor could not have tainted her in-court identification. Without doubt Miss Hilaski would have made the same identification at the trial whether or not she had seen the defendant just prior thereto. He was five feet from her in the bank, spoke to her, vaulted over the counter and back again—an experience she would not likely forget. *See* United States v. Famulari, 447 F.2d 1377 (2d Cir. 1971).

■ It might well be argued that the deeply-rooted practice of allowing witnesses to identify the defendant in open court is no less a suggestive show-up than those condemned by *Stovall* and *Foster*.[4] But we decline to take the giant step of holding in-court identifications inadmissible. It is sufficient safeguard that the accused be allowed to question the weight to be given the "in-court" identification considering the length of time the witness saw the perpetrator of the crime, the elapsed time between the act and the trial, and the fact that the witness had made no other identification of the defendant.

Although not dispositive of this issue, we find support for our holding here in United States v. Famulari, *supra,* and United States v. Jackson, 448 F.2d 963 (9th Cir. 1971). In *Famulari* the Second Circuit found, on facts quite similar to those before us, that the in-court identification was not tainted by the prior out-of-court identification, saying:

"[I]t seems to us impossible, given the circumstances under which the pre-testimonial identification was made, to conclude that Lamont would not have made the same identification from the witness stand. Except for the facts that he viewed Famulari from one side of the room rather than another and that the jury could not see him viewing Famulari, the setting for the courtroom door identification was identical to the setting in which the courtroom identification was made, and the in-court identification was virtually contemporaneous with the pre-testimonial identification." 447 F.2d at 1380–1381.

In *Jackson,* five government witnesses had the opportunity prior to a suppression hearing to view the three defendants

3. The government argues that there can be no denial of due process because it does not appear that Miss Hilaski's pretrial view of Hamilton was "arranged" by the prosecution. We need not decide whether "arrangement" of the show-up by the prosecution is necessary to bring the Fourteenth Amendment into play.

4. Note the following comments by a Columbia Law School professor criticizing the logic of the *Wade* et al. decisions: "One of the things which is hardest for me to understand about this entire line of decisions is the faith in the Court that the fair and reliable and true evidence of identification is the witness's testimony from the stand that the defendant is the man. It seems to me that of all possible identifications that you could conceive of this identification, this in-court identification, although subject to cross-examination, is certainly the most unreliable.

\* \* \* \* \*

"This isn't an identification. Far from being a lineup, it is just a ritual. He knows exactly that it is the man sitting there with the three uniformed guards sitting behind him, with their arms crossed. That is the man he is supposed to pick out."

Panel Discussion, "The Role of the Defense Lawyer at a Line-Up in Light of the Wade, Gilbert, and Stovall Decisions," 4 Crim.L.Bull. 273, 283–84 (1968) (Remarks of H. Richard Uviller).

out of the presence of their attorneys. Later, during both the suppression hearing and the trial the defendants were asked to stand so they could be viewed by these witnesses. They complied without objection. The court rejected the claim that the in-court identification was tainted by the prior identification, noting that

"the inadvertent confrontation prior to the suppression hearing was less suggestive than the 'stand-up' procedure followed, in the presence of counsel and without objection, at the suppression hearing and the subsequent trial." 448 F.2d at 967.

*See also* United States v. Ballard, 418 F.2d 325 (9th Cir. 1969).

Having concluded that both the fingerprint exemplars and the eyewitness testimony were properly admitted we find that there is sufficient evidence to support the conviction on Count 1. We have examined Hamilton's other contentions which have a bearing on Count 1 and find them to be without merit.

Affirmed.