**UNITED STATES of America**
**Plaintiff-Appellee,**

v.

**Manuel P. AMARAL, Defendant-**
**Appellant.**

**No. 73-2129.**

United States Court of Appeals,
Ninth Circuit.

Dec. 3, 1973.

Alan Saltzman, of Saltzman & Goldin, Hollywood, Cal., for defendant-appellant.

Paul Sweeney, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

**1150**

## OPINION

Before DUNIWAY and WRIGHT, Circuit Judges, and TURRENTINE,* District Judge.

TURRENTINE, District Judge:

### I. BACKGROUND

On March 14, 1973, a two count indictment was filed against appellant Manuel P. Amaral and co-defendant Douglas Nordfelt. Count one charged Nordfelt with the January 23, 1973, robbery of a national bank in violation of 18 U.S.C. § 2113(a). Count two charged appellant Amaral with the February 12, 1973 robbery of a national bank, and Nordfelt with aiding and abetting in violation of 18 U.S.C. § 2. A motion to sever was granted. On April 6, 1973, Nordfelt was tried by a jury and convicted on both counts. Defendant Amaral pleaded not guilty. The case was tried by a jury on April 4–6, 1973 and the defendant was found guilty.

Defendant Amaral appeals his conviction below on five grounds:

First, appellant contends that the trial court improperly limited the voir dire examination, particularly in regards to prejudice against Mexican-Americans and overestimation of the credibility of eye-witness identification, thereby depriving appellant of a fair trial.

Second, appellant argues that it is reversible error for the trial court to have failed to give an instruction, *sua sponte*, to the effect that eye-witness identification should be viewed with extreme caution.

Third, appellant alleges that the trial court admitted irrelevant and highly prejudicial evidence thereby depriving defendant of due process.

Fourth, Amaral argues that the trial court erroneously denied appellant a pre-trial hearing on the admissibility of testimony based on an out-of-court photographic identification.

Fifth, appellant maintains that the trial court abused its discretion in refusing to allow the defense to present testimony by an alleged expert witness regarding the reliability of eye-witness testimony.

We find that these contentions are without merit, and we accordingly affirm the conviction.

### II. THE VOIR DIRE

This court has held that the procedures for selecting a fair and impartial jury are properly within the trial judge's discretion as long as they are not unreasonable or devoid of purpose to obtain an impartial tribunal. Hilliard v. Arizona, 362 F.2d 908 (9th Cir. 1966).

■ Appellant argues that the trial judge inadequately probed the venire persons with respect to bias and prejudice against persons of Mexican or Latin descent.

Unlike United States v. Carter, 440 F.2d 1132 (6th Cir. 1971), cited to us by appellant, the trial judge here did inquire into the racial and ethnic bias, if any, of the jury panel. His voir dire of the first prospective juror included a question with respect to prejudice regarding "race, creed, or religion." [R.T. 73] Thereafter, he reminded the prospective jurors that all questions asked of one juror were asked of all and that the voir dire process was a cumulative one designed to probe into the juror's state of mind to discover whether each could determine guilt or innocence based solely on the evidence presented at trial. [R.T. 89] Furthermore, upon concluding his voir dire, the trial judge, in response to a specific request by defense counsel, reiterated his query regarding racial or ethnic prejudice. [R.T. 101]

We, therefore, find that the voir dire conducted by the trial judge was adequate to secure a fair and impartial jury.

Our discussion below of eye-witness testimony makes clear our holding that

---

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

the trial court's failure to inquire into juror bias in favor of eye-witness identification was not error.

## III. SUA SPONTE INSTRUCTION

■ Appellant argues that the "plain error" section of F.R.Crim.P. Rule 52 requires reversal in that the trial court failed to sua sponte give a cautionary instruction regarding the credibility of eye-witness testimony. The standard to be applied in Federal cases regarding plain error has been well formulated in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If the alleged error did not influence the jury, or had but a very slight effect, the error was not plain nor was it a defect affecting substantial rights.

■ The court's omission to instruct on the issue of eye-witness testimony was not plain error. As in United States v. De Sisto, 329 F.2d 929 (2d Cir. 1964), the jury's attention was focused on the issue of identity. At summation, counsel for the Government outlined for the jury what he surmised would be defense counsel's argument, i. e. the untrustworthiness of eye-witness identification. Defense counsel in summation argued to the jury that eye-witness testimony suffers from serious distortions because of surrounding circumstances. And again, Government's counsel in rebuttal returned to the identification issue.

■ Finally, we note the recent Second Circuit case, United States v. Evans, 484 F.2d 1178 (2d Cir. 1973). In *Evans*, defense counsel requested the trial judge to give a specific charge to the jury regarding the dangers of eye-witness identification. The trial judge declined to give such an instruction and the Second Circuit panel refused to find error, holding that such a charge is "at most * * *" a matter of discretion. *Evans, supra,* 484 F.2d at 1188. Defendant's counsel here, as in *Evans*, had a "full opportunity" to develop all facts relevant to identification. Furthermore, we concur with the Second Circuit's en-

dorsement of United States v. Barber, 442 F.2d 517, 526 (3rd Cir. 1971) cert. denied 404 U.S. 958, 92 S.Ct. 327, 30 L. Ed.2d 275 (1971) that "it is necessary neither to instruct the jury that they should receive certain identification testimony with caution, nor to suggest to them the inherent unreliability of certain eye-witness identification."

## IV. IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE

■ Appellant Amaral contends that the court below erred in admitting testimony and exhibits which had "virtually no probative value, were grossly prejudicial and should have been excluded from evidence." [Appellant's Opening Brief, p. 37]

The testimony objected to served as one link connecting appellant Amaral to the truck seen in the vicinity of the bank the morning of the robbery. We, therefore, reject appellant's contention that the testimony "added nothing" to the Government's case [Appellant's Opening Brief, p. 38]. The situation before us is far different from that in Diaz-Rosendo v. United States, 364 F.2d 941, 944 (9th Cir. 1966) where this Court could "not see how, or in what manner, it [could] be said that [the evidence admitted] in any way relates to or tends to prove the commission of the . . . crimes set forth in the indictment."

## V. PHOTOGRAPHIC IDENTIFICATION

■ As a further assignment of error, appellant Amaral contends that the trial court erroneously denied appellant's motion for a pre-trial hearing, made the day of trial, regarding proposed in-court testimony allegedly fatally tainted by an impermissibly suggestive photo spread. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Prior to Rule 41's amendment, the law in this Circuit was clear that motions to suppress must be made before trial or hearing unless defendant lacked opportu-

nity to move or if the court in its discretion, for some other good cause, entertained the motion during trial. United States v. Dykes, 460 F.2d 324 (9th Cir. 1972); United States v. Hamilton, 469 F.2d 880 (9th Cir. 1972).

Since the amendment to Rule 41, however, the language construed in those cases has been eliminated and the procedure governing motions to suppress is presently found in F.R.Crim.P. Rule 12. The Notes of the Advisory Committee on Rules indicate that the amendment was intended to require that the motion to suppress be made in the trial court rather than in the district in which the evidence was seized. Its purpose was to avoid duplication of effort and piecemeal adjudication. In view of these comments and in the absence of contrary indication in Rule 12, we find that the above cited cases are still the law in this Circuit. Furthermore, we have no reason to believe that discovery was inadequate to notify defense counsel of the intent by the Government to introduce evidence of an out-of-court photographic identification. Consequently, defendant's objection to the court's action must be rejected.

■ Finally, appellant's allegations regarding an improper "show-up" [1] resulting from the viewing by the witnesses of the defendant at the defense table shortly before trial and then being asked individually by the prosecutor whether the defendant was the person seen robbing the bank, are effectively answered in United States v. Hamilton, *supra.* On the authority of *Hamilton,* we reject this leg of appellant's argument for relief.

## VI. EXPERT TESTIMONY

■ The basic purpose of any proffered evidence is to facilitate the acquisition of knowledge by the triers of fact thus enabling them to reach a final determination. As often stated, our system of evidence rests on two axioms: only facts having rational probative value are admissible and all facts having rational probative value are admissible unless some specific policy forbids. 1 Wigmore, Evidence §§ 9, 10 (3d ed., 1940). Evidence which has any tendency in reason to prove any material fact has rational probative value.

■ The general test regarding the admissibility of expert testimony is whether the jury can receive "appreciable help" from such testimony. 7 Wigmore, Evidence § 1923 (3d ed., 1940). Jenkins v. United States, 113 U.S.App. D.C. 300, 307 F.2d 637 (1962). The balancing of the probative value of the tendered expert testimony evidence against its prejudicial effect is committed to the "broad discretion" of the trial judge and his action will not be disturbed unless manifestly erroneous. Salem v. United States Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962).

■ The countervailing considerations most often noted to exclude what is relevant and material evidence are the risk that admission will 1) require undue consumption of time, 2) create a substantial danger of undue prejudice or of confusing the issues or of misleading the jury, 3) or unfairly and harmfully surprise a party who has not had a reasonable opportunity to anticipate the evidence submitted. Scientific or expert testimony particularly courts the second danger because of its aura of special reliability and trustworthiness.

Because of the peculiar risks of expert testimony, courts have imposed an additional test, i. e. that the testimony be in accordance with a generally accepted explanatory theory. Frye v. United States, 54 App.D.C. 46, 293 F. 1013 (1923); United States v. Stifel, 433 F.2d 431 (6th Cir. 1970).

■ "The theory upon which expert testimony is excepted from the opinion evidence rule is that such testimony serves to inform the court [and jury] about affairs not within the full under-

---

1. The term "show up" is used to describe an out-of-court confrontation between the witness and the defendant alone.

standing of the average man." Farris v. Interstate Circuit, 116 F.2d 409, 412 (5th Cir. 1941). See also Duff v. Page, 249 F.2d 137, (9th Cir. 1957) ; Cohen v. Western Hotels, Inc., 276 F.2d 26 (9th Cir. 1960). Therefore, expert testimony must also be in regards to a proper subject.

■ Finally, expert testimony is admissible only when the witness is in fact an expert and is accepted as such by the trial court.

Whether the court below erred in excluding the alleged expert testimony regarding the credibility of eye-witness identification, therefore, must be decided in reference to the four outlined criteria: 1. qualified expert; 2. proper subject; 3. conformity to a generally accepted explanatory theory; and 4. probative value compared to prejudicial effect.

At the trial, defense counsel moved to introduce the alleged expert testimony of Dr. Bertram Raven, a holder of a doctoral degree in psychology. Dr. Raven's testimony, as was made clear by the defense's offer of proof, was to be in regards to the effect of stress on perception and, more generally, regarding the unreliability of eye-witness identification. The trial court below considered this a novel question and, in view of the Government's opposition, requested both sides to submit authorities supporting their respective contentions. No appellate or trial court decision was cited by either counsel resolving the issue facing us on appeal.

The trial court, excluded the proffered testimony of Dr. Raven on the ground that "it would not be appropriate to take from the jury their own determination as to what weight or effect to give to the evidence of the eye-witness and identifying witnesses and to have that determination put before them on the basis of the expert witness testimony as proffered." [R.T. 313].

■ Our legal system places primary reliance for the ascertainment of truth on the "test of cross-examination."

United States v. De Sisto, *supra*, at 934. In *De Sisto*, a truck driver, victim of a hijacking, testified as to the identity of the hijacker and gave conflicting testimony regarding the presence or absence of tattoo marks on the accused's arms. Judge Friendly wrote that the jury was "superbly equipped" to evaluate the impact of the stress during the hijacking on the perception of the identification witness. *De Sisto, supra*, at 934. It is the responsibility of counsel during cross-examination to inquire into the witness' opportunity for observation, his capacity for observation, his attention and interest and his distraction or division of attention.

Indeed, the research of Dr. Robert Buckout, whose expertise in the area of perception was acknowledged by the Government (although he was not to testify at the trial) indicates that the effects of stress on perception can be effectively communicated to the jury by probing questioning of the witnesses. In his study, Dr. Buckout reports that eye-witnesses do reply "I can't recall, it happened so fast" [Record at 140]. Certainly effective cross-examination is adequate to reveal any inconsistencies or deficiencies in the eye-witness testimony. Here defense counsel uncovered no confusion or uncertainty as to identity in any of the various witnesses. Furthermore, not all witnesses were under similar conditions of stress: one saw the accused as he sat in his car blocking the accused's exit from the bank parking lot, another saw the accused from the safety of her house as he returned to his truck after having robbed the bank, yet another saw him as he entered the bank and approached the teller to whom he delivered the threatening note.

■ Accordingly, we hold that the court below did not err in excluding the testimony of Dr. Raven.

We need not reach the question, even assuming our competency to pass on it, whether the proffered testimony was in accordance with a generally accepted theory explaining the mechanism of per-

ception. Furthermore, while we see the dangers of admitting such testimony in terms of confusing the jurors and undue delays, we believe that our holding makes it unnecessary to analyze those dangers in detail.