David **LINDSAY**, Petitioner,

v.

Robert J. **HENDERSON**, Superintendent, **Auburn Correctional Facility,** Respondent.

No. 79 Civ. 4672.

United States District Court, S. D. New York.

Oct. 17, 1980.

David Lindsay, pro se.

William S. Stancil, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 8, 1977, petitioner David Lindsay was convicted after trial in New York State Supreme Court, Bronx County, of robbery in the first degree and assault in the second degree, and was sentenced to indeterminate terms of imprisonment of from 7½ to 22½ years on the robbery charge and up to seven years on the assault charge, these sentences to run consecutively. Petitioner now attacks the judgment of conviction on four grounds: (1) that petitioner was denied his right to counsel at a pre–trial identification encounter; (2) that there was insufficient evidence to support the conviction of assault in the second degree; (3) that prejudicial conduct during trial by the prosecution denied petitioner his right to a fair trial; and (4) that the court improperly admitted identification testimony of the unconstitutional pre–trial identification. Petitioner previously raised these constitutional claims [1] in the state courts on appeal to

---

1. The state's assertion that petitioner failed to exhaust his state remedies is altogether controverted by a comparison of Lindsay's instant petition with the brief supporting his appeal in

the Appellate Division, First Department, where the conviction was unanimously affirmed without opinion. Leave to appeal was denied by the New York State Court of Appeals on May 24, 1979. Petitioner has thus exhausted his state remedies as required by 28 U.S.C. § 2254(b). For the reasons stated below, the petition is dismissed.

### I.

Petitioner's first ground of attack is that he was unconstitutionally denied assistance of counsel at a pre–trial identification encounter. The facts relevant to that identification are as follows. On March 13, 1977, five armed men entered an unlicensed social club in a private house in the Bronx, detained residents and guests at gunpoint for several hours and stole certain property from residents Daphne Henry and Wilbert Henry. With the aid of one eyewitness, five men were arrested on March 19 by Detective Lawrence DePaolis; two were charged with robbery and the other three, including petitioner, were initially charged only with possession of a shotgun and marijuana. A preliminary hearing on the possession charge was scheduled for March 23 at the Criminal Court. Wilbert Henry and Daphne Henry were subpoenaed to testify as complainants at the hearing.

On the morning of March 23, the Henrys picked up Detective DePaolis and drove him to court. DePaolis testified that they did not discuss the possibility that the Henrys would identify as robbers the three men, including petitioner, then charged only with possession. During the morning session, the Henrys signaled to DePaolis and identified one of the three, who was then arrest-ed for robbery. After the lunch recess, but before petitioner's case was called, petitioner and the third unidentified man, along with about five other prisoners, were produced in the courtroom. There is trial testimony that petitioner was handcuffed; it is unclear whether any or all of the other prisoners were also handcuffed.[2] The Henrys again signaled to Detective DePaolis and identified petitioner and one of the other prisoners as the other two perpetrators, and the two were arrested for robbery. DePaolis testified at the subsequent suppression hearing that he was "astonished" by the Henrys' identification of the three perpetrators.

It is the pro se petitioner's contention that this informal identification procedure in the absence of counsel violated his right to counsel. This court recognizes that the Sixth Amendment principles elucidated in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) apply to "an informal post–indictment confrontation arranged by the Government." *United States v. Roth*, 430 F.2d 1137, 1140 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971). To establish a violation of the right to counsel here, however, it would be necessary to show that the identification was arranged by the prosecution, not by happenstance, and that any suggestiveness was occasioned by law enforcement officials. *United States v. Gentile*, 530 F.2d 461, 468 (2d Cir.), *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976). In the instant case, petitioner was brought to court for a preliminary hearing, and the Henrys were present in response to the court's subpoena. It does not appear, therefore, that Detective DePaolis or any

---

state court. Although the pro se petitioner has phrased his arguments somewhat differently, the issues are essentially the same. At any rate, to satisfy the exhaustion requirement, the constitutional claim made in federal habeas proceedings need only be substantively equivalent, not identical, to the one advanced in state court. *Fielding v. LeFevre*, 548 F.2d 1102 (2d Cir. 1977).

**2.** Detective DePaolis testified at the suppression hearing that Lindsay was not handcuffed

and was standing with a group of court officers and at least five other defendants in custody. (H. 107–08, 141).* Daphne Henry, though, testified at trial that Lindsay was handcuffed (T. 132) and was accompanied by at least two or three other prisoners. (T. 82; *cf.* T. 132). Wilbert Henry testified that petitioner was in a group of five. (T. 491, 538).

* Citations to "H" refer to suppression hearing testimony. Citations to "T" refer to trial testimony.

other officer engineered the identification. Rather, the encounter occurred solely by operation of the court calendar. Thus, *Wade* requirements do not apply, and Detective DePaolis had no duty to notify defense counsel of the possibility that the Henrys would identify petitioner.[3] *United States v. Gentile,* 530 F.2d 461, 468 (2d Cir.), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976).

■ The court's finding that petitioner's right to counsel was not violated does not complete discussion of the identification encounter. The admissibility of identification testimony is limited by the due process clause of the Fourteenth Amendment, *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), as well as by the Sixth Amendment right to counsel. The due process inquiry involves two questions: first, whether the confrontation procedure was impermissibly suggestive; and second, whether under the totality of circumstances the identification was reliable even though the confrontation was suggestive. *Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *Manson v. Braithwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1976).

The court turns first, then, to inspect the suggestiveness of the March 23 confrontation. Daphne Henry, a prosecution witness, testified that petitioner was in handcuffs when he appeared in court. (T. 132). As discussed above, the prosecution had not planned that Daphne and Wilbert Henry be present in the courtroom on March 23, and the confrontation that occurred was therefore accidental. The Second Circuit recently considered a habeas petition challenging a chance confrontation that occurred when a crime victim peered into an adjoining room at a stationhouse and identified a handcuffed suspect as the perpetrator. *Gonzalez v. Hammock,* Slip op. 79–2226 (2d Cir. Aug. 20, 1980). Applying the *Neil v. Biggers* standard, the court found the iden-

tification testimony to be reliable overall and denied relief. The court also stated that any inadvertent suggestiveness occasioned by the suspect being seen handcuffed at the stationhouse was only "possibl[y] corrupting." *Gonzalez v. Hammock, supra,* Slip op. 79–2226 at 5128. Several courts have emphasized that the inadvertence of a confrontation substantially diminishes any suggestiveness. *United States v. Colclough,* 549 F.2d 937 (4th Cir. 1977); *United States v. Gentile, supra,* 530 F.2d 461; *United States v. Matlock,* 491 F.2d 504 (6th Cir.), *cert. denied,* 419 U.S. 864, 95 S.Ct. 119, 42 L.Ed.2d 100 (1974); *Mock v. Rose,* 472 F.2d 619 (6th Cir. 1972), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2165, 36 L.Ed.2d 693 (1973); *United States v. Hamilton,* 469 F.2d 880 (9th Cir. 1972). Where there have been inadvertent confrontations with handcuffed suspects, some courts have found the circumstances not overly suggestive. *United States v. Matlock, supra; Mock v. Rose, supra* (unclear whether prisoner was handcuffed or only led by arm by police officer); *see also Boyd v. Henderson,* 555 F.2d 56 (2d Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977); *United States v. Hamilton, supra; cf. Green v. Loggins,* 614 F.2d 219 (9th Cir. 1980); *United States v. Colclough,* 549 F.2d 937, 941 (4th Cir. 1977) (dictum).

■ In the instant case, petitioner was produced in court surrounded by a group of at least five other prisoners. His case had yet to be called and his name had not been mentioned within earshot of the Henrys. The suggestiveness of the circumstances was further mitigated by the fact that the confrontation was accidental, not planned by the prosecution. In sum, the court does not find that the confrontation was so suggestive that petitioner was denied due process by the subsequent admission of the Henrys' identification testimony. Recognizing, though, that any viewing of a handcuffed prisoner will be suggestive to some degree, the court considers as well the overall relia-

---

3. The court makes no finding regarding the genuineness of DePaolis' "astonishment" at the Henrys' identification of Lindsay.

bility of the Henrys' identification of petitioner.

In *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 401 (1976), the Supreme Court rejected the contention that testimony based on a suggestive identification procedure must necessarily be suppressed. Instead, the Court stated that overall reliability is "the linchpin in determining the admissibility of identification testimony," 432 U.S. at 114, 97 S.Ct. at 2253, and adopted the standard outlined in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *Biggers* set forth five factors to be considered in assessing the reliability of a witness' identification testimony: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description by the witness; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. 409 U.S. at 199–200, 93 S.Ct. at 382. *See also Gonzalez v. Hammock,* Slip op. 79–2226 (2d Cir. Aug. 20, 1980); *Jackson v. Fogg*, 589 F.2d 108 (2d Cir. 1978); *Mysholowsky v. People of the State of New York*, 535 F.2d 194 (2d Cir. 1976). These factors will be considered *seriatim* with respect to Daphne and Wilbert Henry:

#### 1. *The view of the criminal.*

The Second Circuit in *Gonzalez v. Hammock, supra,* stated that "[a] mere glance would be sufficient for identification." Slip op. 79–2226 at 5127. In the instant case, both Henrys had ample opportunity to view petitioner at the scene of the crime. When Daphne Henry was led downstairs to the social club below her home she was placed next to petitioner, who was guarding the guests, and spent perhaps five to seven minutes in adequate lighting by his side. (T. 61, 78–79, 197, 200). Wilbert Henry viewed petitioner on three occasions: when Henry answered the door and allowed the armed men to enter from the street, while Henry was lying on the floor with his face turned towards the perpetrators (at which time Henry was pistol–whipped), and again when Henry was led to the basement social club where petitioner was guarding the guests. (T. 480–85, 913–15).

#### 2. *Degree of attention.*

There is no reason to doubt that the Henrys were able to note the appearances of the intruders. The Henrys were not scrambling for cover, and their confrontations with petitioner were sustained, not momentary and hysterical.

#### 3. *Prior descriptions.*

The Henrys could not recall at trial their description of the perpetrators to the police immediately after the crime. (T. 84–86, 533–34).

#### 4. *The level of certainty.*

Trial testimony indicated that the Henrys were certain of their corporeal identification of petitioner. (T. 135, 491).

#### 5. *Lapse of time.*

The length of time between the crime and the confrontation was ten days. This period does not exceed time spans already found acceptable in this circuit. *See, e. g., United States ex rel. Carnegie v. MacDougall*, 422 F.2d 353 (2d Cir.), *cert. denied*, 398 U.S. 912, 90 S.Ct. 1711, 26 L.Ed.2d 74 (1970) (identification evidence admitted where showup occurred three months after the crime); *United States ex rel. Rutherford v. Deegan*, 406 F.2d 217 (2d Cir.), *cert. denied*, 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969) (identification evidence allowed where showup occurred ten days after the crime).

The foregoing application of the *Biggers* factors demonstrates the overall reliability that is the proper basis for admission of the Henrys' identification testimony. Although the identification encounter was certainly suggestive to some degree, under the totality of circumstances petitioner was not denied due process by the admission of the Henrys' testimony.

672

In rejecting the contention that petitioner was denied either the right to counsel or due process, the court also denies the fourth ground of the petition—that testimony regarding the identification was improperly admitted during trial.

### II.

■ Petitioner's second ground is that he was denied due process in that there was insufficient evidence of the victim's injury to support his conviction of assault in the second degree. Allegations of insufficient evidence are cognizable in a habeas petition only if the conviction was so devoid of evidentiary support that a due process issue is raised. *Kennedy v. Fogg*, 468 F.Supp. 671 (S.D.N.Y.1979); *Perez v. Metz*, 459 F.Supp. 1131 (S.D.N.Y.1977). In the instant case there was ample testimonial evidence of victim's injury. The sufficiency of the evidence, therefore, remains a question of state law and does not rise to federal constitutional dimensions. Accordingly, the second ground of the petition is denied.

### III.

■ Petitioner's third ground is that prejudicial remarks by the prosecuting attorney regarding petitioner's Rastafarian religion denied him a fair trial. In particular, petitioner complains that the prosecutor read into the record a prejudicial out-of-court statement of a defense witness. Petitioner further complains of other scattered references to his Rastafarian religion. The prior out-of-court statement, however, was properly permitted by the trial court as impeachment of the defense witness. Although the statement did reflect the witness' fear of, and perhaps prejudice against, petitioner and his Rastafarian friends, it was for that reason relevant to the witness' credibility and yet not so prejudicial as to deny petitioner a fair trial. As to the other references to petitioner's religion, these were references developed during examination and testimony, justified for identification purposes. This court finds no support for petitioner's contention that the conduct of the prosecution was prejudicial or improper. The issue, moreover, is not whether the prosecutor's conduct was "undesirable, erroneous, or even 'universally condemned,' but [whether] it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *see also Ketchum v. Ward*, 422 F.Supp. 934, 944–47 (W.D.N.Y.1976), *aff'd*, 556 F.2d 557 (2d Cir. 1977).

For the above reasons, the court rejects the petitioner's four contentions and the petition is accordingly dismissed.

So Ordered.