## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Pan Jon Lemos

August 22, 1994

Case No. (Criminal) 85565

BY JUDGE THOMAS A. FORTKORT

This case came before the Court on Defendant Pan Jon Lemos' Motion for Appointment of an Eyewitness Identification Expert. The expert would be expected to testify at Lemos' trial on the unreliability of eyewitness identification testimony. Lemos is indigent and is currently represented by the Fairfax Office of the Public Defender. Each of the proposed expert witnesses is academically qualified to render an opinion. The cost for their services is within the normal amounts charged in this area for similarly qualified experts. The sole question is whether the appointment of any of these experts would be "appropriate." *Singleton v. Commonwealth*, 16 Va. App. 841, 842 (1993). The *Singleton* decision draws from Code of Virginia § 19.2-163(2), which authorizes the circuit court to "direct the payment of such reasonable expenses incurred [by court-appointed counsel] . . . as it deems appropriate under the circumstances of the case."

The Court assumes that the term "appropriate" must be defined against the Constitutional requirements of *Ake v. Oklahoma*, 470 U.S. 68 (1985). In *Ake*, the United States Supreme Court held that access to a psychiatric expert was a fundamental right of an indigent defendant under both the Sixth Amendment right to counsel and the Fourteenth Amendment which applies the Sixth Amendment strictures to the States. *Ake*, 470 U.S. at 76. Further, the court held, "the state is required to provide an indigent de-

fendant with the raw materials integral to the building of an effective defense." *Id.* at 77.

In this Court's opinion, the case at bar does not stand on Constitutional principles. This Court finds that the *Ake* reasoning does not apply, as in this case, to experts whose testimony may be merely helpful, but not crucial, to the defendant.[1] Instead, this case must be decided on general principles of law which govern admissibility of the testimony of an eye-witness identification expert.

Along these lines, the Court of Appeals for the Third Circuit held in *United States v. Downing*, 753 F.2d 1224 (3d Cir. 1985), that the failure of the district court to admit the testimony of an expert on witness perception and memory was reversible error. However, the Third Circuit based its decision on Fed. R. Evid. 702, which specifically permits such testimony. Virginia has no such comparable rule. To evaluate the admissibility of such expert testimony, the Federal Rules contemplate an *in limine* proceeding centering on the reliability of the scientific principles upon which this expert will opine, balanced against the likelihood that introduction of such testimony may, in some way, overwhelm the jury. *Downing*, 753 F.2d at 1226. A second inquiry in the admissibility analysis is whether the proffered testimony "shows that particular features of the eyewitness identifications involved may have impaired the accuracy of those identifications." *Id.* In overruling the district court's refusal to admit the testimony, the Third Circuit was acting in its supervisory capacity.

Several other states have admitted the testimony of an expert on eyewitness identification, memory and perception. The Arizona Supreme Court in *State v. Chapple*, 660 P.2d 1208 (Ariz. 1983), reversed a trial court's refusal to allow the testimony of such an expert, basing its decision on Rule 702, Ariz. R. Evid. That Rule states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

---

[1] The *Ake* court required the appointment of a state-paid mental health professional to aid the defendant when his mental state is at issue in the case. The defendant cannot establish his mental capacity without the testimony of an expert witness. He can challenge eye witness testimony through cross-examination of those witnesses, establishing his own creditability and offering an alibi among other things.

In reaching its decision, the *Chapple* court adopted the four prong test designed to determine the admissibility of expert evidence on eyewitness identification first set forth in *United States v. Amaral*, 488 F.2d 1148 (9th Cir. 1973). The testimony may be admitted if (1) the expert is qualified; (2) the proffered evidence is a proper subject for expert testimony; (3) the testimony conforms to a generally accepted explanatory theory; and (4) the probative value outweighs the possible prejudicial effect of the testimony. *Chapple*, 660 P.2d at 1218-1219, citing *Amaral*, 448 F.2d at 1153. In its opinion, the *Chapple* court went on to say that "the worry about invading the province of the jury has been solved for us by the provisions of Rule 704, Ariz. R. of Evid., which permits opinion testimony even though 'it embraces an ultimate issue'." *Chapple*, 660 P.2d at 1219.

*Chapple* is significant to discussion of the case at bar because the Virginia legislature has employed the same language in Code of Virginia § 8.01-401.3(A) as appears in Rule 704, Ariz. R. of Evid. Similarly, Code of Virginia § 8.01-401.3(B) allows an expert witness to testify as to the ultimate issue of fact. However, the Virginia provisions depart from the rule in Arizona in that the Virginia language applies only in *civil* cases. Further, Code of Virginia § 8.01-401.3(C) directs:

> Except as provided by the provisions of this section, the exception to the "ultimate fact in issue" rule recognized in the Commonwealth prior to enactment of this section shall remain in full force.

Thus, the court in *Chapple* need not have and did not "worry about invading the province of the jury" because the issue in Arizona was statutorily foreclosed by Rule 704, Ariz. R. of Evid. In Arizona, such expert testimony is permitted notwithstanding the fact that it may "embrace an ultimate issue." *Chapple*, 660 P.2d at 1219. By contrast, this Court is instructed by statute to proceed with analysis of whether the expert's testimony would have probative value compared with a possible prejudicial effect on the jury's deliberations. This formulation is both the fourth criteria in the *Amaral* test and the generally accepted test as to expert testimony in Virginia prior to enactment of Code of Virginia § 8.01-401.3.

In *Amaral* the Ninth Circuit upheld the trial court's decision to exclude the expert's testimony on eyewitness identification. The trial court held, "it would not be appropriate to take from the jury their own determination as to what weight or effect to give to the evidence of the eyewitnesses and identifying witnesses and to have that determination put before them on

the basis of the expert witness testimony as proffered." *Amaral*, 448 F.2d at 1153. In the instant case, this Court agrees with the holding in *Amaral*. It is well-settled in Virginia that witness credibility questions are exclusively within the province of the jury. *Coppola v. Commonwealth*, 220 Va. 243, 252 (1979); *Zirkle v. Commonwealth*, 189 Va. 862, 870 (1949); *Johnson v. Commonwealth*, 142 Va. 639, 640 (1925). Any probative value of the proffered expert testimony would be counterbalanced and outweighed by its prejudicial effect on the jury. Such testimony would serve to seriously undermine the traditional function of the jury in this Commonwealth and this Court will not assist in fostering the erosion of the jury's role under these circumstances.

Accordingly, this Court overrules the defendant's Motion for Appointment of an Eyewitness Identification Expert.