# Constitutionality of the Death Penalty Provision of 18 U.S.C. § 1111

Because of the unfettered discretion conferred on the sentencing authority by 18 U.S.C. § 1111, the death penalty may not constitutionally be imposed under that statute.

In the absence of express legislative authorization, federal district judges have no power to devise procedures which would satisfy the requirements dictated by the Supreme Court's death penalty decisions.

July 17, 1981

## MEMORANDUM OPINION FOR
## THE ASSOCIATE ATTORNEY GENERAL

This memorandum responds to your request for the views of this Office as to whether the government may seek the death penalty under 18 U.S.C. § 1111 [1] in the manner and under the circumstances set forth in your memorandum and in the materials attached thereto. For the reasons stated below, we believe that 18 U.S.C. § 1111 is unconstitutional under governing decisions of the Supreme Court, and that the constitutional infirmities can be remedied only through legislation, not through executive or judicial action.

## I. Introduction

This Office has recently surveyed the recent decisions of the Supreme Court on the death penalty, and we will not discuss those decisions in detail here. [2] In *Furman* v. *Georgia,* 408 U.S. 238 (1972), the Court struck down a state statute providing for the death penalty on the ground that it did not provide sufficient guidance to ensure against arbitrary infliction of capital punishment. [3] In *Gregg* v. *Georgia,* 428 U.S.

---

[1] In relevant part, 18 U.S.C. § 1111(b) provides, "Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto 'without capital punishment,' in which event he shall be sentenced to imprisonment for life."

[2] See Memorandum Opinion of April 30, 1981, for the Assistant Attorney General, Criminal Division from Theodore B Olson, Assistant Attorney General, Office of Legal Counsel. "Constitutionality of Statute Imposing Death Penalty for Attempted Assassination of the President" [NOTE: The April 30, 1981 Memorandum Opinion is reprinted in this volume at p. 116 *supra.* Ed.]

[3] Justice Douglas concluded that the statutes were "pregnant with discrimination," 408 U.S. at 256–57; Justice Stewart believed that under the statutes, capital punishment was "so wantonly and so freakishly imposed," 408 U.S. at 310; and Justice White emphasized that the penalty was too infrequently imposed to serve the ends of criminal justice, 408 U.S. at 312–13.

153 (1976), the Court upheld a Georgia statute enacted in response to *Furman.* The plurality of three Justices emphasized four features of the statute: (1) the sentencer's attention was drawn to the particular circumstances of the crime and of the defendant by reference to certain specified aggravating and mitigating factors; (2) the discretion of the sentencer was controlled by clear and objective standards; (3) the sentencer was provided with all relevant evidence during a separate sentencing hearing; and (4) there was a system of appellate review to guard against arbitrariness. 428 U.S. at 158 (Stewart, Powell, & Stevens, JJ.). Two other Justices expressed the view that the death penalty was in all circumstances cruel and unusual punishment prohibited by the Eighth Amendment. 428 U.S. at 227 (Brennan, J., dissenting); 428 U.S. at 231 (Marshall, J., dissenting). The *Gregg* decision requires a state or federal court to conduct a separate sentencing hearing in death penalty cases in which the sentencer's discretion is confined within relatively narrow limits specified in statute and administered by the trial judge. The Court has been careful to ensure that trial courts comply with the strict requirements of *Gregg. See Godfrey* v. *Georgia,* 446 U.S. 420 (1980); *Lockett* v. *Ohio,* 438 U.S. 586 (1978). Nonetheless, the Court has upheld statutes that are different in a variety of ways from the Georgia statute; all such statutes provide for a "bifurcated" proceeding, but the precise nature of the proceeding is allowed to vary substantially. *See Proffitt* v. *Texas,* 428 U.S. 242, 248–57 (1976); *Jurek* v. *Texas,* 428 U.S. 262, 267–68 (1976).

## II. Discussion

The question presented here is whether 18 U.S.C. § 1111 could be found constitutional if a district court were, despite the absence of express statutory authorization, to conduct a separate sentencing hearing in compliance with *Gregg.* The statute itself, which was passed in 1948, provides for no such hearing, and its language suggests that a separate hearing is not contemplated ("unless the jury qualifies its *verdict* . . . .") 18 U.S.C. § 1111(b) (emphasis added). There is nothing in the statute's legislative history to suggest that such a hearing is required or permitted. In these circumstances, the question is basically a mixed one of statutory construction and "inherent" judicial authority: whether, under 18 U.S.C. § 1111, Congress intended to authorize a district court to devise procedures complying with *Gregg,* or whether the courts have inherent power to devise such procedures.

It bears emphasis that the development of procedures for a bifurcated proceeding for the imposition of the death penalty would require considerable creativity on the part of the district court. The court would have to devise an entirely separate sentencing proceeding and to elect among the various procedures that the Court has upheld in such proceedings. For example, the court might compose an elaborate list of

mitigating and aggravating circumstances, *see Gregg* v. *Georgia, supra,* or determine that particular questions should be asked of the jury relating to the defendant's capacity for future acts of violence, *see Jurek* v. *Texas, supra.* No statute, of course, presently provides federal judges with guidance for making these determinations. As a result, each federal district court would fashion its own procedures, leading to inconsistency on an issue that basically requires uniformity. That alone might doom the procedure under *Furman.*

The decision of the Supreme Court in *United States* v. *Jackson,* 390 U.S. 570 (1968), strongly suggests that 18 U.S.C. § 1111 does not grant such broad-ranging powers to federal district judges. At issue in *Jackson* was the constitutionality of the Federal Kidnapping Act, 18 U.S.C. § 1210(a), which provided a death penalty for certain kidnappers "if the verdict of the jury shall so recommend." The defendant argued that this provision impermissibly penalized his assertion of the right to trial by jury: if the defendant pleaded guilty or waived a jury trial, no death penalty could be imposed; but if the defendant exercised his constitutional right to such a trial, the death penalty might be available. The Government responded that, to avoid the constitutional infirmity, the statute should be construed to allow the judge "to convene a special jury for the limited purpose of deciding whether to recommend the death penalty." 390 U.S. at 572. The Court characterized as "untenable" the suggestion that the Act "authorizes a procedure unique in the federal system—that of convening a special jury, without the defendant's consent, for the sole purpose of deciding whether he should be put to death." 390 U.S. at 576–77. In terms apparently applicable here, the Court stated:

> The Government would have us give the statute this . . . meaning without the slightest indication that Congress contemplated any such scheme. Not a word in the legislative history so much as hints that a conviction . . . might be followed by a separate sentencing proceeding before a penalty jury. . . . [E]ven on the assumption that the failure of Congress to [authorize the requested procedure] was wholly inadvertent, it would hardly be the province of the courts to fashion a remedy. . . . It is one thing to fill a minor gap in a statute—to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.

390 U.S. at 578–80.

In our view, *Jackson* strongly suggests that, in the absence of affirmative statutory language or history to the contrary, a federal statute will

not be construed to authorize a federal district judge to conduct a separate sentencing hearing. This general rule would be particularly likely to be accepted in this context. If 18 U.S.C. § 1111 were to be saved through adoption of the *Gregg* procedures, the district judge would be required, not merely to hold a separate hearing, but also to devise an elaborate set of procedural safeguards to comply with the Supreme Court's rulings in the death penalty area. As *Jackson* concludes, the creation of such safeguards is a legislative task. In the absence of congressional authorization, we believe that it is extremely unlikely that a death penalty would be upheld pursuant to a judicially created *ad hoc* exercise of that power.[4]

Moreover, even those decisions that suggested before *Jackson* that a separate sentencing proceeding is in some contexts within judicial authority would not, in all likelihood, allow a court to devise, under 18 U.S.C. § 1111, a proceeding to comply with *Gregg*. In the context under discussion, the task would not be simply one of bifurcating a trial, with reasonably clear standards set down by the legislature to govern each stage; the task would, rather, entail the far more difficult step of conducting a separate sentencing proceeding under standards and procedures that must in substantial part be developed by the district court. In light of the *Jackson* decision and the heretofore unanimous views of the Executive, Legislative, and Judicial Branches with respect to the unconstitutionality of 18 U.S.C. § 1111, we do not believe that the courts would be permitted to "rescue" that provision through their own creativity even if the establishment of a separate proceeding would be permissible under standards laid down by Congress.

This conclusion is buttressed by the apparent unanimity in the views of all three branches that the death penalty may not be sought under 18 U.S.C. § 1111. At least six courts have expressly so declared. *United States* v. *Denson*, 588 F.2d 1112, 1119 n.6 (5th Cir. 1979), *rev'd on other grounds*, 603 F. 2d 1143 (5th Cir. 1979) *(en banc); United States* v. *Weddell*, 567 F.2d 767, 770 (8th Cir. 1977), *cert. denied*, 436 U.S. 919 (1978); *United States* v. *Kaiser*, 545 F.2d 467 (5th Cir. 1977); *United States* v. *Woods*, 484 F.2d 127, 138 (4th Cir. 1973) *cert. denied*, 415 U.S. 979 (1974); *United States* v. *Collins*, 395 F. Supp. 629, 635 n.8 (M.D. Pa. 1975), *aff'd*, 523 F.2d 1051 (3d Cir. 1975); *United States* v. *Freeman*, 380 F. Supp. 1004 (D.N.D. 1974).

The *Kaiser* decision is illustrative. In that case, the court construed § 1111 as conferring "unfettered discretion on the sentencing author-

<hr>

[4] Before the Court's decision in *Jackson*, there was some uncertainty in the lower courts as to whether and under what circumstances a separate penalty proceeding could be ordered. *See United States* v. *Curry*, 358 F.2d 904 (2d Cir.), *cert. denied*, 385 U.S. 873 (1966), *Frady* v. *United States*, 348 F.2d 84 (D C. Cir.), *cert. denied*, 382 U.S. 909 (1965) *See also Spencer* v. *Texas*, 385 U.S. 554, 567 n.12 (1967) (noting "questionable desirability of this untested technique" but allowing it to be left "to the discretion of the trial court"). In a footnote in *Jackson*, the Court observed that "[i]t is not surprising that courts confronted with such problems have concluded that their solution requires 'comprehensive legislative and not piecemeal judicial action ' " 390 U.S. at 580 n.17 (citation omitted).

ity," thus running afoul of *Furman.* 545 F.2d at 471. The court noted that it had been unable to find a reported case in which a United States Attorney had sought the death penalty under § 1111, and observed that in *United States* v. *Watson,* 496 F.2d 1125, 1126, n.3 (4th Cir. 1973), the Government conceded "that any death penalty imposed under § 1111 would be void." 545 F.2d at 471. *See also United States* v. *Johnson,* 425 F. Supp. 986 (E.D. La. 1976), in which the court stated that the federal death penalty for rape was unconstitutional because "the statute sets forth no guidelines for the trial judge to follow in determining whether or not the death penalty should be imposed. This lack of any require-ment of consideration by the Court of mitigating or aggravating cir-cumstances compels a finding that the federal statute does not conform to the type of statute approved [by the Court] . . .; and, accordingly, that portion of [the statute] which leaves the imposition of the death penalty completely to the discretion of the trial court is unconstitu-tional." 425 F. Supp. at 986.[5]

Similarly, the activity of Congress in the death penalty area suggests an understanding on its part that legislation would be necessary in order to provide for a federal death penalty after *Furman.* The Antihijacking Act of 1974, 49 U.S.C. §§ 1472 & 1473, was enacted after *Gregg* and places considerable constraints on the jury's discretion. The legislative history indicates that Congress understood that *Furman* in-validated a number of federal death penalty provisions, including § 1111. H.R. Rep. No. 885, 93rd Cong., 2d Sess. 14–15 (1974). Congres-sional action to reinstitute the death penalty only with respect to the Antihijacking Act in light of knowledge that § 1111 was unconstitu-tional may be found significant. A number of additional bills have been introduced to restore the federal death penalty. The most recent, S. 550 in the 97th Congress, would attempt to comply with *Gregg* by imposing the necessary procedural safeguards.

Finally, as noted above, we are informed that the Department of Justice, through the Criminal Division, has taken the position that the death penalty may not be sought under 18 U.S.C. § 1111. The consist-ent interpretation of a statute by the institution charged with its en-forcement is accorded considerable deference by the courts. *See United States* v. *Kaiser,* 545 F.2d 467.

This unanimity of view among the three branches of government strongly supports the conclusion that § 1111 does not authorize a dis-trict court to undertake the essentially legislative task of composing its own procedural safeguards in order to comply with *Gregg.*

---

[5] To be sure, the prosecutor did not in any of these cases request the court to conduct a bifurcated proceeding of the sort upheld in *Gregg.* Nonetheless, the courts' unanimous view that the statutes were unconstitutional under *Furman* is not encouraging for the view that judicial "amendment" of the statute to conform to *Gregg* would be permissible.

228

### III. Conclusion

Neither the language nor the legislative history of 18 U.S.C. § 1111 suggests that district judges have been authorized to devise a separate sentencing hearing with procedures complying with the Supreme Court's death penalty decisions. Indeed, the Court's ruling in *Jackson* suggests that courts do not ordinarily have the authority to establish such procedures. The apparent unanimity of views among the three branches since *Furman*—that 18 U.S.C. § 1111 is unconstitutional in its current form—supports this conclusion. For these reasons, we believe that the death penalty may not be sought under 18 U.S.C. § 1111.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*